SLIP OP. 07-172

**UNITED STATES COURT OF INTERNATIONAL TRADE**

---

<table>
<tr><td>_____</td><td>:</td><td></td></tr>
<tr><td>HORIZON LINES, LLC,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Plaintiff,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>Before: Jane A. Restani, Chief Judge</td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>Court No. 05-00435</td></tr>
<tr><td>UNITED STATES,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Defendant.</td><td>:</td><td></td></tr>
<tr><td>_____</td><td>:</td><td></td></tr>
</table>

**OPINION**

[Defendant's motion for summary judgment granted in part and denied in part.]

Dated: November 20, 2007

      Williams Mullen (Evelyn M. Suarez, Francisco J. Orellana, and Dean A. Barclay) for the plaintiff.

      Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Edward F. Kenny); Michael Heydrich, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of counsel, for the defendant.

**BACKGROUND**

      **Restani, Chief Judge:** This matter is before the court on Defendant United States' motion for summary judgment. Plaintiff Horizon Lines, LLC, challenges the partial denial of a protest against certain duties required for repairs made to a vessel under 19 U.S.C. § 1466.

      Plaintiff operates the U.S.-flag vessel Horizon Crusader ("the Crusader"), a vessel

used primarily for trade with Puerto Rico.  Following its arrival in Hong Kong on September 4,

2001, with a shipment of empty containers, the Crusader departed for Karimun Sembawang

Shipyard ("KSS"), a shipyard in Indonesia.  (See Pl.'s Ex. 1 (Walla Aff. ¶ 19); see also Pl.'s

Mem. in Opp'n Mot. Summ. J. ("Pl.'s Br.") 2–3.)  The Crusader was required to undergo

American Bureau of Shipping ("ABS") inspections by September 25, 2001.[1]  (Pl.'s Ex. 2 (Dolan

Aff. ¶ 25).)  Since the vessel could not complete inspections by the deadline, the Crusader went

into lay-up[2] at KSS on September 7, 2007, at which point the required deadline was held in

abeyance.  (Id. ¶ 26; see also Pl.'s Ex. 1 (Walla Aff. ¶ 20).)  The Crusader remained in lay-up at

KSS until November 28, 2001.  (Pl.'s Ex. 1 (Walla. Aff. ¶ 20).)  Pursuant to guidelines provided

by ABS, a survey was conducted by ABS on October 20, 2007, which determined that the

Crusader had been laid-up properly.  (Id. ¶ 21.)

        After securing a dry-dock facility to undergo ABS inspection, the Crusader was

towed to the Jurong Shipyard in Singapore ("Jurong") on November 29, 2001.  (Pl.'s Ex. 2

(Dolan Aff. ¶¶  23, 27).)  The Crusader was then placed in dry-dock from December 8 to

December 15, 2001, where it underwent inspections as well as certain repairs.  (Id. ¶ 28.)

Following the repairs and inspection, the Crusader departed Jurong on January 7, 2002, and

returned to the United States, arriving at the Port of Tacoma, Washington on January 26, 2002.

---

[1] According to United States Coast Guard ("USCG") regulation, inspections must occur
at least twice in a five-year period with no more than three years elapsing between any two
examinations. See 46 C.F.R. § 91.40-3 (Nov. 14, 2007).  The ABS has been delegated inspection
authority by USCG.  See 46 C.F.R. § 8.420 (Nov. 14, 2007).

[2] Lay-up "generally means the ship is taken out of service for an indefinite period of time
and certain work is performed to both de-activate and protect the vessel's equipment and
systems."  (See Def.'s Mem. in Supp. Mot. Summ. J. ("Def.'s Br.") 3 n.2.)

(Def.'s Br. 4.)

Upon arrival in the United States, Plaintiff was required to notify U.S. Customs

and Border Protection ("Customs") of all foreign repairs conducted on the vessel on a Customs

Form CF-226.  Such repairs are dutiable at a 50 percent ad valorem rate on the cost of equipment,

materials and parts or for expenses of repairs made to U.S.-flag vessels outside the United States.

19 U.S.C. § 1466.  Under Section 4.14 of the Customs regulations, vessel owners are required to

complete CF-226 within ninety days from the date of arrival.  Plaintiff submitted the form on

January 31, 2002 (Def.'s Ex. 1 (Horizon's Form 226)), but did not submit all of the supporting

documentation detailing the vessel's repairs until June 24, 2002 (Def.'s Ex. 2 (Horizon's June 24,

2002 Letter to Customs)), more than ninety days after the date of arrival.  On August 30, 2002,

after receiving all the required documentation, Customs liquidated the repair entry and concluded

that Plaintiff owed $810,295.99 in duties.  (Def.'s Ex. 3 (Custom's Notice of Liquidation).)

Customs further concluded that Plaintiff's application for relief from repair duties included in the

June 24, 2002 letter was untimely and would not be considered.[3]  (Id.)

On November 27, 2002, Plaintiff timely filed a protest of Customs' liquidation

determination.  (Def.'s Ex. 4 (Horizon's Protest and Memorandum to Customs ("Horizon's

Protest")).)  On December 15, 2004, Customs Headquarters granted Plaintiff's protest in part, and

denied it in part.  HQ 116237 (Dec. 15, 2004).  Pursuant to that decision, Plaintiff's duties were

reduced to $534,636.14.  (Def.'s Ex. 6 (Custom's Reliquidation Spreadsheet at 3).)  On October

13, 2005, Plaintiff filed suit to challenge the partial denial of its protest and to obtain a refund of

---

[3] Customs' review of Horizon's protest was de novo and all provided documentation was
considered, regardless of whether it was initially filed in a timely manner.  (Def.'s Br. 5 n.4.)

all excess duties paid.  (Def.'s Ex. 7 (Horizon's Complaint).)  This Court has jurisdiction pursuant to 19 U.S.C. § 1514 and 28 U.S.C. § 1581(a).

The parties' dispute involves three primary issues.  First, Defendant contends that Horizon's decision to lay-up the Crusader in KSS was made, at least in part, for the purpose of obtaining repairs at Jurong Shipyard.  Second, Defendant contends that, because various general expenses associated with the lay-up were also incurred to obtain repairs at Jurong, those expenses are dutiable under 19 U.S.C. § 1466, in part.  Third, Defendant argues that a variety of expenses incurred in Jurong itself were related entirely or in part to the repair of the vessel.  The court will address each issue in turn.[4]

## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine whether any genuine issues of fact are material to the resolution of the action and whether the movant is entitled to judgment as a matter of law.  See USCIT R. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit

---

[4] Plaintiff also contends that the method employed by Customs to prorate duties for dual-purpose expenses was not in accordance with the law.  (Pl.'s Resp. Def.'s Supp. Mem. 1.) Plaintiff claims that Customs "assumes that all dutiable expenses incurred in the voyage caused all dual-purpose expenses" and included dutiable repairs in its ratio calculation which did not have a connection to the dual purpose items.  (Id. at 3–5.)  Customs argues that the methodology used to determine the ratio apportioning for dual purpose expenses, consisting of totaling up all of the dutiable expenses and dividing that amount by the total of the dutiable and free expenses, was a reasonable and equitable interpretation of the Customs' laws.  (Def.'s Supp. Mem. 2–4.) On its face it appears that Customs' calculation was rational and therefore entitled to deference. SL Serv., Inc. v. United States, 357 F.3d 1358, 1362–63 (Fed. Cir. 2004) ("Customs' long-standing practice of apportioning the cost of various expenses between dutiable repairs and non-dutiable inspections and modifications comports with both the statute and common sense.").  As Plaintiff did not raise this issue in its initial briefing, the court will not further explore whether, under the facts of this case, there is a unique problem with the ratio employed.

under the governing law will properly preclude the entry of summary judgment." Id.

Consequently, factual issues may not be tried or resolved upon a motion for summary judgment.

Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988).

## DISCUSSION

**I.      Whether the "Lay-Up" of the Crusader Was Made in Part for the Purpose of Obtaining Foreign Repairs**

The Federal Circuit has often repeated that the phrase "expenses of repairs" in 19

U.S.C. § 1466 is to be read broadly. Texaco Marine Serv. Inc. v. United States, 44 F.3d 1539,

1544 (Fed. Cir. 1994). In cases involving expenses incurred solely for the purpose of repairs, the

Federal Circuit applies a "but for" test to determine whether a particular expense is dutiable. SL

Serv., Inc., 357 F.3d at 1360. Thus, expenses incurred by repairs include all expenses "'which,

but for dutiable repair work, would not have been incurred.'" Id. (citing Texaco, 44 F.3d at

1544). That standard, however, does not apply in cases involving so-called "dual-purpose"

expenses, i.e., those expenses incurred in part for reasons other than the repair of a vessel. SL

Serv., Inc., 357 F.3d at 1361.

Plaintiff contends that lay-up expenses are, as a matter of law, not considered

"expenses of repairs." (Pl.'s Br. 8–12.) Plaintiff's primary authority for this proposition is a

1916 decision rendered by the Board of General Appraisers (the "Board"). See In re Thousand

Islands Steamboat Co., T.D. 36,685 (1916). In that case, the plaintiff, Thousand Islands,

protested duties of $44.46 assessed on expenses associated with laying-up a steamboat in a harbor

during the winter season. Applying Rev. Stat. 3114, the Board determined that the laying-up

expense did not come within the term of "equipment" or "expense of repairs." Id. In its one

sentence explanation of its position, the Board stated that "[i]t is merely the expense of putting the

boat away in winter quarters."  Id.

The court is not persuaded that this case implies that no "lay-up" could ever be

considered an "expense of repair."  Rather, as the Board indicated, it is the purpose for which the

lay-up was made that determines whether the costs associated with the lay-up are "expenses of

repairs."  If, for example, the lay-up is made because the boat is operated on a seasonal basis, but

not for the purpose of obtaining repairs, then the costs are not covered by § 1466.  If, by contrast,

the lay-up occurs in part to facilitate the repair of a vessel, then the expenses of the lay-up may be

dutiable in appropriate proportion.  Thus, the question of whether the Crusader was "laid up" or

merely "parked" at KSS is irrelevant.  The relevant question is whether the expenses incurred at

KSS were necessary to the repairs scheduled to take place at Jurong.  To phrase the question

another way, was the lay-up at KSS necessitated, at least in part, by the repairs to be made at

Jurong?

Turning to the evidence on the record, Defendant, as the party seeking summary

judgment, has met its burden by pointing to evidence indicating that Horizon Lines decided to

lay-up the Crusader at KSS in large part because of its proximity to Jurong, where it was

scheduled to be repaired.  Defendant notes various email discussions of where to send the

Crusader for its scheduled inspection.  Those emails conclude that the vessel would best be sent

to "an anchorage at an island just off Singapore that has an anchorage and small shipyard."

(Def.'s Ex. 14 (Email from Glen Moyer, Horizon Lines, LLC, to Jim McKenna et al. (Aug. 29,

2001)).)  Another email notes that the Crusader would lay idle at KSS for two months, with the

vessel then "shifting to [Jurong] in early Nov[ember] to commence a longer than usual repair

period."  (Def.'s Ex. 15 (Email from Joe Breglia, Horizon Lines, LLC, to Francis Lai (Aug. 29,

2001)).)  Thus, Defendant has produced evidence from which a reasonable fact-finder could

conclude that the lay-up in KSS was made in part to allow for repairs of the Crusader.  The

burden therefore shifts to Plaintiff.

Plaintiff claims that the lay-up in KSS was not precipitated in any way by the need

for repairs in Jurong.  Plaintiff points to evidence from its expert witness's deposition, stating that

none of the work performed on the Crusader at KSS was "crossover work" that actually advanced

the repair work that was done at Jurong.  (Def.'s Ex. 9 (Dolan Dep. 60:11–14).)  Instead, the lay-

up at KSS was purportedly made due to a seasonal decline in the Puerto Rico trade, and for a

mandated ABS inspection.  Evidence clearly indicates that inspection and seasonal variation in

trade were additional considerations prompting the decision to lay-up the Crusader in KSS, and

then place her in dry-dock in November.  Nevertheless, Plaintiff has pointed to no evidence

suggesting that the lay-up was in no way prompted by Horizon's desire to conduct repairs at

Jurong.  In order to avoid summary judgment, Plaintiff must not only point to evidence

suggesting additional reasons to place the Crusader in KSS, it must also point to evidence

suggesting that preparation for repairs at Jurong was not among the reasons for the lay-up at KSS.

In the absence of such evidence, summary judgment on this issue is proper, and the court

concludes that there is no genuine issue of material fact that the Crusader was laid-up in KSS, at

least in part, in anticipation of a "longer than usual repair period" at Jurong.  Thus, the lay-up

itself is an "expense of repair" in part, and all costs related to the lay-up at KSS are in part

"expenses of repairs" and dutiable at a prorated amount.

## II.     Expenses Incurred at KSS During Lay-Up

### A.     Invoices 2 & 3

These invoices concern expenses incurred by obtaining electric generators to supply the Crusader with power while laid-up in KSS between September 11 and November 9, 2001.  Defendant points to evidence that the generators were integral to laying-up the Crusader at KSS.  (Def.'s Ex. 19 (Walla Dep. 38:22–39:22).)  Plaintiff argues that the generators were not necessary for the actual repairs performed at Jurong.  (Pl.'s Br. 13.)  Plaintiff fails to present any evidence, however, that the electrical generators were not necessary to the lay-up at KSS.  Given that the lay-up itself was in part an "expense of repair" for the Crusader, summary judgment for Defendant with respect to these invoices is proper.

### B.     Invoice 4

This invoice covers expenses related to the use of devices such as heaters, blowing fans, desiccants, and hoses used to keep parts of the Crusader dry while she was laid-up in KSS. Defendant argues that these items "consist[] of foreign equipment purchases for the vessel" and are, therefore, fully dutiable under 19 U.S.C. § 1466.  (Def.'s Br. 19.)  Plaintiff argues that these items are disposable purchases.  (Pl.'s Br. 14.)  Customs has ruled that consumable items intended for use in transit, such as disposable silverware, are not dutiable as a vessel's "equipment."  See C.S.D. 85-18 (treating disposable silverware, retained on board an airplane and not removed for sale or use on other aircraft, as not dutiable).  As evidence the items were disposable, Plaintiffs note the testimony of their expert witness, who stated that blowers are "basically a consumable item."  (Def.'s Ex. 19 (Walla Dep. 54:24–25).)  Such evidence raises a genuine issue of material fact as to whether these items are not part of the vessel's "equipment."  Therefore, summary

judgment with respect to Invoice 4 is denied.

### C.      Invoice 5

Invoice 5 concerns expenses for a "lay-up survey" conducted by ABS prior to the Crusader's transfer to Jurong.  Defendant argues that the cost of the ABS lay-up inspection was incurred in order to protect the vessel while it was in lay-up awaiting repairs at Jurong, and therefore, is dutiable at an appropriate prorated amount.  (Def.'s Br. 20.)  Plaintiff argues that the ABS lay-up survey was conducted only to ensure that the vessel is properly put into lay-up, not to verify that it is ready for repairs.  (Pl.'s Br. 14–15.)  Consequently, Plaintiff argues that the ABS report cannot be an "expense of repair" within the meaning of 19 U.S.C. § 1466.  (Id.)  As discussed above, however, the lay-up at KSS was itself an "expense of repair," at least in part.  Plaintiff's evidence does not contradict Defendant's assertion that the ABS survey was incident to the lay-up, and therefore an "expense of repair" at a prorated amount.  Having failed to raise a genuine issue of material fact in this regard, summary judgment as to Invoice 5 is granted in favor of Defendant.

### D.      Invoice 6a

From the pages available on the record, it appears that this invoice covers expenses incurred by the Crusader while at KSS, including transportation of personnel, boat services, port clearances, agency fees, crew change, visa on arrival, and port navigation dues, which Customs found dutiable at a prorated amount.[5]  HQ 116237 at 3.  Defendant has pointed to the absence of evidence supporting Plaintiff's contention that these expenses were not "expenses of repairs,"

---

[5]  Only pages 5, 6 and 8 of Invoice 6a were produced by Horizon Lines, who stated that they submitted everything they had received from KSS with respect to this invoice.  (Oral Arg. Tr. 47:18–25.)

arguing that the costs necessary to complete the lay-up were costs associated in part with

obtaining repairs at Jurong.  (Def.'s Br. 20.)  Plaintiff argues that there is a genuine issue as to

whether "Horizon incurred these expenses to lay-up the ship pursuant to ABS standards" rather

than to "advance repairs made at Jurong."  (Pl.'s Br. 15.)  Plaintiff admits, however, that the

expenses associated with this invoice were necessary to successfully complete the lay-up.  (Id.)

As the court has concluded that the lay-up itself was an "expense of repair" in part, the associated

costs in this invoice are likewise "expenses of repair" that are eligible for prorated duties.

Summary judgment for Defendant regarding these items is therefore granted.

### E.     Invoice 6b

Customs found some of the items under this invoice dutiable at a prorated amount,

but also concluded that full duties were owed on the "supply [of] manpower for mechanical

work," the heating lamp and bilge alarm installation, some flexible cable, and a vent duct cover.

(Def.'s Br. 21.)  According to Defendant, full duties were charged on certain items because they

were billed to an "owner's repair account," implying that the expenses were repairs performed in

KSS, not charges related to the lay-up prior to seeking repair in Jurong.  (Id. at 21–22.)

Plaintiff points to evidence that "manpower for mechanical work" was used to

open the boiler for lay-up, to ensure that it would dry.  (Pl.'s Br. 19.)  This explanation is

corroborated by the records kept by the ABS surveyor, who checked to ensure that the boiler

doors were kept open as part of the lay-up inspection.  (Pl.'s Ex. 5 (ABS Checklist).)  Expert

testimony also suggests that inspections, but not repairs, would have necessitated opening the

boiler.  (Def.'s Ex. 19 (Walla Dep. 61:7–24).)  Specifically, Walla noted in his deposition that,

although a boiler might be opened in places for repairs, it would be highly unusual to open all of

the boiler doors in the course of repairs.  (See id. at 61:22–62:3 ("Typically in a repair you'd only remove those required to gain access to the repair area.  In this case, we removed the majority, if not all, of the handholds and doors, again, to allow air circulation to prevent condensation.").)  This evidence is sufficient to raise a genuine issue as to whether the boiler doors were opened for the purpose of laying-up the Crusader, not as part of repairs.  Accordingly, summary judgment with respect to "manpower for mechanical work" is denied.

Plaintiff argues that the "heating lamp and bilge alarm installation" were both necessary to the lay-up of the Crusader, and therefore, were not exclusively for the purpose of repairs, regardless of which account they were charged to.  (Pl.'s Br. 19.)  To support this claim, Plaintiff points to the fact that both were procured in accordance with the ABS inspection standards for vessel lay-ups.  (Id.)  Furthermore, Plaintiff points to expert evidence asserting that a heat lamp is used to raise the condensation point within a vessel, preventing water damage while the vessel is not being used.  (Def.'s Ex. 19 (Walla Dep. 63:8– 10).)  Walla also testified that the additional bilge alarm was installed to notify the crew immediately if the vessel began taking on water while the vessel was not manned with a full crew.  (Id. at 63:24–64:7.)  With a full crew, a large influx of water would be identified more easily, and such a bilge alarm would be not be necessary.  (Id.)  This evidence is sufficient to raise a genuine issue of material fact as to whether the "heating lamp and bilge alarm installation" were expenses related to laying-up the Crusader, rather than solely for repairs.  There is also evidence that the additional alarm was removed prior to entry of the vessel at Jurong, raising a genuine issue as to whether this item may be classified as "equipment" for the Crusader under 19 U.S.C. § 1466.  (Pl.'s Br. 19 (citing Walla Dep. 64:8–19).)  Therefore, summary judgment with respect to these items is denied.

With respect to costs incurred to cover the vent ducts, Plaintiff provides the ABS guidelines as evidence that the air intake vents were required to be covered during vessel lay-up (Pl.'s Ex. 6 (ABS Guidelines at 222)), as well as expert testimony stating that these covers actually had to be removed for repairs.  (Def.'s Ex. 19 (Walla Dep. 37:8–18).)  This evidence is sufficient to raise a genuine issue as to whether the vent duct cover expense was necessary to properly lay-up the Crusader, instead of specifically relating to repairs.  Consequently, summary judgment with respect to this item is denied.

Finally, with respect to the "flexible cable" and "shipment of owner's generator," Plaintiff argues that it did not use the generators to make repairs, but to meet the requirements of the ABS for vessel lay-up.  (Pl.'s Br. 17–18.)  As evidence, Plaintiff notes that ABS guidelines specifically call for the vessel to have power, and that the ABS surveyor for the Crusader found that Plaintiff had complied with this requirement.  (Pl.'s Ex. 5 (ABS Checklist); Pl.'s Ex. 6 (ABS Guidelines at 222).)  This evidence is sufficient to raise a genuine issue as to whether the shipment of the generator and related cables were necessary to comply with lay-up requirements, rather than solely for repairs.  Therefore, summary judgment with respect to these items is denied.

Customs prorated duties on the remaining items under this invoice.  See HQ 116237 at 3.  Plaintiff argues that those items were not necessary for repairs at Jurong.  As discussed above, Customs correctly concluded that the lay-up itself was in part necessitated by repairs that would be completed at Jurong as soon as space became available.  Therefore, the expenses incurred for the purpose of laying-up the Crusader are dutiable to the extent that the lay-up was made for the purpose of procuring repairs.  Plaintiff has not raised any evidence suggesting that the lay-up was not made in part for the purpose of obtaining repairs, and therefore,

summary judgment with respect to the remainder of items under Invoice 6b is granted.

**F.      Invoice 7a**

These invoices concern a variety of expenses associated with the lay-up, including long distance telephone charges, transportation of a rental generator to and from the vessel, land transportation for the owner's agent or contractor, port dues, navigation dues, and boat services (other than transportation of crew).  Customs found these items dutiable at a prorated amount. (Def.'s Br. 22.)  Plaintiff argues that telecommunications charges are "intrinsic to any lay-up," and, therefore, are not expenses of repair.  (Pl.'s Br. 20.)  Plaintiff has produced no evidence, however, showing that the lay-up was not, at least in part, related to the need for repairs at Jurong. As the expenses associated with the lay-up may be prorated as dutiable under 19 U.S.C. § 1466, telecommunications expenses integral to the lay-up are also dutiable on a prorated basis. Similarly, Plaintiff asserts that the costs associated with transporting a replacement generator are non-dutiable because they were costs incurred to place the Crusader in lay-up, not directly used for the purpose of repair.  Once again, this argument fails to raise a genuine issue as to whether the lay-up itself was prompted in part by the need for repairs at Jurong.  In the absence of a genuine issue of material fact on this issue, summary judgment for Defendant on this item is granted.

**G.      Invoices 7b1 and 7b2**

These invoices cover a number of expenses that were treated as fully dutiable, including expenses for a blank vent, hawse pipe grating, installation of air conditioning, a penetration pipe, an Indonesian flag, and the special shipment of an electric generator.  HQ 116237 at 3–4.  The invoices also cover expenses that were prorated, including "riggers

assistance," garbage disposal, shore power, tug assistance, towing charges, wharfage, security

watchman, pilotage, marine gas oil, fresh water and "walkie-talkies." (Def.'s Ex. 18 (Invoice

7b1).) With respect to the prorated items, Plaintiff once again argues that the expenses were

incurred for the purposes of the lay-up, implying that they, therefore, cannot be considered

"expenses of repairs." (See Pl.'s Br. 21–22.) As noted, as the lay-up itself was made in part for

the purpose of obtaining repairs, a prorated duty on expenses associated with the lay-up is

appropriate. Consequently, Defendant's motion for summary judgment with respect to these

items is granted.

      With respect to the blank vent, the expense appears to relate to a covering placed

on the air intake or exhaust pipe of the vessel during lay-up. (See Def.'s Ex. 19 (Walla Dep.

37:8–18) (stating that exhaust vents were closed during lay-up but opened during repairs at

Jurong).) Plaintiff's evidence suggests that the exhaust coverings are not used in repairs, and

were removed at the end of the lay-up, and therefore do not constitute an "expense of repair" or

"equipment." (See id.) Plaintiff has also produced evidence that the penetration pipe was

installed to aid in dehumidifying the Crusader during lay-up, and that the pipe was removed at the

time the vessel was reactivated. (See id. at 68:7–12; see also Def.'s Ex 18 (Invoice 22a, Item H-

055) (stating that the dehumidifying exhaust penetration was "closed").) As such, summary

judgment for Defendant is denied with respect to these items.

      Similarly, Plaintiff has produced evidence that the hawse pipe grating was installed

to protect the vessel during lay-up. (See Pl.'s Ex. 9 (Dolan Report 16).) Plaintiff has also

produced evidence indicating that the hawse pipe was removed after the lay-up was finished.

(Pl.'s Br. 23 (citing Def.'s Ex. 18, Invoice 22a, Item H-055).) This evidence is sufficient to raise

a genuine issue as to whether the hawse pipe was "equipment" or an "expense of repair" within

the meaning of 19 U.S.C. § 1466. Therefore, summary judgment with respect to this item is

denied.

　　　　　Similarly, Customs treated installation of an air-conditioning unit as equipment

and/or an expense of repair, and, therefore, as fully dutiable. Defendant points to the fact that the

air conditioning unit was charged to the "owner's repair account" as evidence supporting

Customs's conclusion. (Def.'s Br. 23.) Plaintiff claims that air-conditioning is a necessity for

successfully accomplishing the lay-up because it serves to protect electronic equipment, in

accordance with ABS guidelines. (Pl.'s Br. 23.) It appears that this system was installed

temporarily to assist with the lay-up, and was not used during repairs, nor was it permanently

affixed to the vessel. Therefore, Plaintiff has raised a genuine issue as to whether the air-

conditioning unit is fully-dutiable as "equipment" or an "expense of repair." Summary judgment

with respect to this item is, therefore, denied.

　　　　　The final item in this invoice is an Indonesian flag. Vessel owners purchased this

flag after the September 11, 2001 terrorist attacks in New York and Washington, D.C., in order to

protect against sabotage of their vessel. Defendant argues that Plaintiff has not produced any

evidence showing that the flag was not part of the vessel's "equipment" within the meaning of 19

U.S.C. § 1466. (Def.'s Br. 23.) Plaintiff has not pointed to any evidence showing that the flag

was discarded or treated as a consumable item. As such, the court finds that summary judgment

for Defendant is appropriate with respect to this item.

### H.    Invoice 8a

　　　　　This invoice also concerns expenses incurred during lay-up, including lay-up

charges, hiring a security guard, use of walkie-talkies, and the purchase of marine gas oil.

Plaintiff has produced no evidence suggesting that these items are not general lay-up expenses.

As noted above, expenses related to the lay-up are dutiable to the extent that the lay-up at KSS

was made for the purpose of obtaining repairs at Jurong. Summary judgment for Defendant with

regard to this invoice is therefore granted.

### I.      Invoice 8b

This invoice concerns a number of expenses incurred during lay-up from

November 1 to November 28, 2001, including land transportation, certain boat services charges,

port navigation dues and port clearance. Plaintiff claims that these expenses were incurred to

ensure that the vessel was not dragging its anchor while in lay-up, as required by the ABS lay-up

standards. (Pl.'s Br. 24.) As above, the court finds that the lay-up was in part prompted by the

need for repairs at Jurong, and therefore is dutiable at a prorated amount. The court thus finds

that summary judgment with respect to the land transportation, boat services charges, and port

navigation dues is granted.

Plaintiff also points to the fact that Customs appears to have inconsistently granted

relief from duties for harbor navigation dues. In Invoice 6a, Customs granted Plaintiff's protest

with respect to port clearance. (Def.'s Br. 20.) Such inconsistent treatment raises a genuine issue

of material fact as to whether the port clearance fee should be dutiable at all. Therefore, summary

judgment with respect to the port clearance fee is denied.

### J.      Invoice 11a1

This invoice covers the purchase of one twenty-foot long refrigerated container.

Plaintiff contends that the container was purchased for another vessel, the CSX Challenger, not

the Crusader, and therefore, should not be dutiable.  (Pl.'s Br. 24.)  As evidence, Plaintiff points

to an affidavit submitted by its witness, Joseph Walla, stating that the purchase was for the

Challenger.  (Pl.'s Ex. 1 (Walla Aff. ¶ 38).)  Additionally, Plaintiff points to the fact that the

invoice itself, dated November 22, 2001, concerns the "CSX 'Challenger' dry-docking at Jurong

Shipyard in Singapore."  (Def.'s Ex. 18 (Invoice 11a1).)

Defendant argues that the affidavit evidence cannot be accepted because Walla

testified at his deposition that the container was purchased for the Crusader.  (Def.'s Reply Mem.

in Supp. Mot. Summ. J. ("Def.'s Reply Br.") 12.)  Defendant is correct in this respect; an affidavit

contradicting prior deposition testimony generally cannot be used to create a genuine issue of

material fact.  Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994) ("When

an interested witness has given clear answers to unambiguous questions, he cannot create a

conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not

give a satisfactory explanation of why the testimony is changed.").  The invoice itself, however,

corroborates Walla's statement that the container was purchased for the Challenger, not the

Crusader.  Defendant claims that the date of the invoice, November 22, 2001, indicates that the

costs were incurred at the time the Crusader entered dry dock at Jurong.  (Def.'s Reply Br. 12.)

The Crusader entered Jurong on November 29, 2001, for her scheduled dry-dock.  (Def.'s Ex. 4

(Horizon's Protest at 3).)  Moreover, the invoice clearly identifies the sale of the container as

being "for the subject vessel arrived in Singapore on 7th May 2001."  (Def.'s Ex. 18 (Invoice 11a-

1).)  The contents of the invoice are sufficient to raise a genuine issue as to whether the container

was purchased for the Crusader.  Consequently, summary judgment with respect to this invoice is

denied.

**K.      Invoice 11a2**

This invoice concerns various professional services, "main agency fees," and telecommunications charges for the Crusader while it was laid-up in KSS.  Customs assessed full duties on these professional services because Horizon allegedly provided no evidence to show that the expenses did not relate to foreign repairs.  HQ 116237 at 4.  Customs also assessed prorated duties on the agency fees and telecommunications charges.  Id.  Defendant claims that the professional services charge should be fully dutiable because Plaintiff has not produced evidence demonstrating that it does not consist of foreign repair services.  (Def.'s Br. 25.) Plaintiff has presented evidence, however, that the professional services were rendered to ensure that the vessel did not drag anchor while in lay-up.  (See Def.'s Ex. 19 (Walla Dep. 71:6–13).) Additionally, the invoice itself states that, rather than being repairs, these were "[l]aid-[u]p condition surveys."  (Def.'s Ex. 18 (Invoice 11a2, Item F).)  These facts are sufficient to raise a genuine issue as to whether the inspections were performed in the course of a lay-up, as opposed to being, in and of themselves, repairs.  Therefore, summary judgment with respect to this item is denied.

With regard to the remainder of the charges, the court notes that Plaintiff has produced no evidence suggesting that these fees were not incurred in the course of completing the lay-up of the Crusader.  Because the lay-up was conducted in part for the purpose of obtaining repairs in Jurong, these fees are dutiable at a prorated amount.  Summary judgment with respect to the "main agency fees" and "telecommunications charges" included in Invoice 11a2 is, therefore, granted.

### L.      Invoice 11a3

This invoice covers expenses for the supply of provisions, which Customs found

dutiable because Defendant did not produce evidence showing that the provisions were not

foreign equipment or expenses of repairs.  HQ 116237 at 4.  Plaintiff has submitted an affidavit

stating that the cost of hiring the night engineer was prompted by the need to provide assistance

while Joseph Blunt was alone on the vessel.  (Pl.'s Ex. 1 (Walla Aff. ¶ 39).)  The affidavit also

states that a night cook and provisions were needed to feed Horizon's personnel who were

tending to the ship during the lay-up.  (Id.)  These facts are sufficient to raise a genuine issue as to

whether the provisions were fully dutiable as "expenses of repairs" or "equipment."

Customs treated the hotel accommodations as outside the scope of 19 U.S.C. §

1466.  HQ 116237 at 4.  The remaining costs, including telecommunications expenses, are

admitted to have been expenses incurred during the lay-up of the Crusader, and therefore, are

dutiable at the prorated amount as discussed above.  (Pl.'s Br. 25–26.)  Accordingly, summary

judgment with respect to the remaining charges in Invoice 11a3 is granted.

### M.      Invoice 11b1

Invoice 11b1 concerns expenses incurred at KSS during October 2001, including

"main agency fee," crew transit, telecommunication equipment, land transportation charges, ferry

tickets to Karimun Island, transit visa fees and professional services.  Consistent with its prior

rulings, Customs determined that crew transit, land transportation, and transit visa fees were

outside the scope of 19 U.S.C. § 1466.  HQ 116237 at 4.  As before, Customs treated the

professional services as fully dutiable, and prorated the remaining charges.  Id.  With respect to

the prorated charges, Plaintiff argues that summary judgment is inappropriate because the fees

were related to the lay-up, and were not directly used for repairs of the vessel.  (Pl.'s Br. 25–27.)

As noted, because the lay-up was necessitated in part by the repairs at Jurong, summary judgment

is appropriate with respect to the prorated fees.  With respect to the professional services fees, the

invoice itself states that the services consisted of "[l]aid-[u]p condition surveys."  (Def.'s Ex. 18

(Invoice 11b1, Item G).)  As above, this evidence is sufficient to raise a genuine issue of material

fact as to the nature of the professional services.  Therefore, summary judgment with respect to

this item is denied.

   **N.     Invoice 11b3**

            This invoice covers expenses for the purchase of a television for the vessel, the

purchase of provisions from the KSS store, the hire of a night engineer, and the survey of a

damaged portable generator.  Customs treated the television and provisions as fully dutiable, and

the remainder as dutiable at a pro-rated amount.  HQ 116237 at 4.  Plaintiff argues, as before, that

the provisions and night engineer related to the lay-up, not to the repair of the vessel.  (Pl.'s Br.

27.)  As noted above, Plaintiff has submitted an affidavit stating that the cost of hiring the night

engineer was prompted by the need to provide assistance while Joseph Blunt was alone on the

vessel.  (Pl.'s Ex. 1 (Walla Aff. ¶ 39).)  The affidavit also states that the provisions were needed

to feed Horizon's personnel who were tending to the ship during lay-up.  (Id.)  The affidavit

raises a genuine issue as to whether the provisions were fully dutiable as "expenses of repairs" or

"equipment."  Plaintiff does not appear to contest that the television is dutiable as equipment.

(Pl.'s Br. 27.)  The remainder of the items, including survey of the faulty generator, are admitted

to have been expenses incurred during the lay-up of the Crusader, and, therefore, are dutiable at

the pro-rated amount as discussed above.  (Id.)  Accordingly, summary judgment with respect to

the remaining items on Invoice 11b3 is granted.

> **O.     Invoice 11b4**

This invoice consists of charges incurred by the Crusader during September of 2001, including land transportation, courier services, hotel accommodations, and an airline ticket for Wally Becker.  Customs treated the land transportation and hotel accommodations as outside the scope of 19 U.S.C. § 1466, and the remainder were assessed duties at a prorated amount.  HQ 116237 at 4.  Plaintiff contends that the remaining charges relate to the lay-up, not to repairs, and are therefore not dutiable.  (Pl.'s Br. 28.)  As discussed above, the court finds that the lay-up was made in part to assist the Crusader in obtaining repairs at Jurong.  As such, costs associated with the lay-up are dutiable at a prorated amount.  Summary judgment with respect to the remaining items is granted.

> **P.     Invoice 11c**

This invoice covers the expenses of hiring tug boats to tow the Crusader from its lay-up in KSS to Jurong for repairs.  Customs found all the expenses associated with the tow to be dutiable at a prorated amount.  HQ 116237 at 5.  Plaintiff argues that "only the lay-up necessitated the towage of the vessel from Singapore to Jurong."  (Pl.'s Br. 28.)  If the Crusader had not been in lay-up, it could have entered Jurong under its own power.  Although there may be evidence to support that claim, the court's finding that the lay-up itself was made in part for the purposes of repairs renders the towing an "expense of repair" that may be assessed at a prorated amount.  Consequently, summary judgment with respect to Invoice 11c is granted.

> **Q.     Invoice 11d1**

This invoice concerns expenses incurred during November 2001, including main

agency fees, telecommunication expenses, crew transit, land transportation expenses, and

professional services rendered.  As with Invoice 11b1, Customs assessed full duties on

professional services, and prorated duties on the main agency fee and telecommunications

charges.  HQ 116237 at 5.  As before, Customs found that crew transit and land transportation

were outside the scope of 19 U.S.C. § 1466.  Id.  As noted, because the lay-up was necessitated in

part by the repairs at Jurong, summary judgment is appropriate with respect to the prorated fees.

With respect to the professional services fees, the invoice itself states that the services consisted

of "[l]aid-[u]p condition surveys."  (Def.'s Ex. 18 (Invoice 11d1, Item E).)  As above, this

evidence is sufficient to raise a genuine issue of material fact as to the nature of the professional

services.  Therefore  summary judgment with respect to this item is denied.

### R.     Invoice 11d2

This invoice concerns expenses incurred in November by the Crusader, including

telecommunications, hire of a night engineer, provisions, and freight forwarding.  Customs treated

the provisions as fully dutiable, the remainder were assessed with prorated duties as expenses

related to the lay-up.  HQ 116237 at 5.  Plaintiff argues, as it did with respect to Invoices 11a3

and 11b4, that these expenses are not related to repairs, and therefore are not dutiable at all.  (Pl.'s

Br. 29.)  Plaintiff has submitted an affidavit stating that the cost of hiring the night engineer was

prompted by the need to provide assistance while Joseph Blunt was alone on the vessel.  (Pl.'s Ex.

1 (Walla Aff. ¶ 39).)  The affidavit also states that a night cook and provisions were needed to

feed Horizon's personnel who were tending to the ship during the lay-up.  (Id.)  These facts are

sufficient to raise a genuine issue as to whether the provisions were fully dutiable as "expenses of

repairs" or "equipment."

The remaining costs, including telecommunications expenses, are admitted to have been expenses incurred during the lay-up of the Crusader, and therefore, are dutiable at the prorated amount as discussed above.  (Pl.'s Br. 29.)  Accordingly, summary judgment with respect to the remaining charges is granted.

## III.    Expenses Incurred at Jurong

### A.    Invoice 22a

This extensive invoice covers numerous activities performed on the Crusader while dry-docked at Jurong between November 29, 2001, and January 7, 2002.  (Def.'s Ex. 18 (Invoice 22a).)  Although Plaintiff concedes that many of the items on the invoice are dutiable as repairs,[6] it did protest the assessment of prorated duties on items included in Section 1, entitled "services and port charges."  (Pl.'s Br. 30–31.)  Specifically, Plaintiff argues that certain apportioned duties, including lay-berth charges, telephone services, fireline water, garbage removal, crane services and line handlers should not have been assessed duties because they do not relate to repairs.  (Id. at 32.)

Plaintiff argues that these tasks were not part of the repairs that were performed at Jurong.  Defendant argues that performance of these support tasks was necessary to the completion of the repairs and the scheduled inspection, even if these tasks do not constitute repairs themselves.  SL Serv., Inc., 357 F.3d at 1362, held that certain expenses that are not

---

[6] Plaintiff did not protest all of Invoice 22a in its initial protest to Customs and conceded that items 3.1, 4.2, 5.1 and 8 were dutiable, and therefore not properly before the court.  (See Pl.'s Supp. Mem. in Opp'n Mot. Summ. J. ("Pl.'s Supp. Br.") 2–4; Pl.'s Ex. 7 (Horizon's Application for Further Review, dated May 18, 2004, at 8) (stating that Plaintiff protested only items 1-1 to 1-16 under Invoice 22a); Def.'s Ex. 4 (Horizon's Protest at 6).  Under 28 U.S.C. § 1581(a), the court cannot resolve claims for items that were not subject to a protest.  XL Specialty Ins. Co. v. United States, 341 F. Supp. 2d 1251, 1255 (CIT 2004).

themselves repairs, such as the cost of dry docking, might nonetheless be dutiable if they would

have been caused by the repair work, absent the other, non-dutiable inspection.  Id.

Plaintiff argues, that to complete repairs, Horizon did not need: telephone services

or a fireline; to remove the crew's garbage or the dehumidification equipment; the assistance of

line handlers; or to place the vessel into a lay-berth.  (Pl.'s Br. 32.)  Plaintiff has presented an

affidavit stating that no repairs, other than repainting and hull work, required dry-docking.  (Pl.'s

Ex. 1 (Wall Aff. ¶ 35).)  Plaintiff has not, however, pointed to any other evidence raising a

genuine issue that the telephone services, fireline water, garbage removal, and crane services

were not incidental to repairs of the vessel, despite the fact that they did not constitute repairs

themselves.  Accordingly, summary judgment with respect to these prorated items is granted.

**B.      Invoice 22b**

Under this invoice, Defendant contends that there is no genuine issue as to whether

Section 2.1-1, "Dry-docking Time," Section 2.1-9A, "Cargo Hold Tank Top Cleaning," Section

2.1-9B, "Cargo Hold Cell Guide Support Structure Cleaning," and Section 2.1-34, "Engine Room

and Fan Room Cleaning," should be prorated because they are necessary to both inspection and

repair of the Crusader.  (Def.'s Br. 32–34.)

Plaintiff points to evidence that "many challenged items were used exclusively for

non-dutiable work."  (Pl.'s Br. 34.)  Plaintiff provides testimony of their expert, Walla, stating

that the garbage removal charge (Section 1-7) was necessary to clean up after the crew.  (Def.'s

Ex. 19 (Walla Dep. 85:4–7); Pl.'s Supp. Br. 4–5.)  Walla's testimony also indicates, however, that

garbage removal was a "dual accumulation" and that repairs were occurring along with

inspections at this time.  (Def.'s Ex. 19 (Walla Dep. 96:8–14).)  Walla's testimony, therefore,

supports Defendant's argument for summary judgment, and summary judgment with respect to garbage removal is granted.

Plaintiff also points to evidence that the crane service (Section 1-8) was not used for repairs, but to remove items from the vessel that had been placed on various hatches. (Def.'s Ex. 19 (Walla Dep. 97:9–24).)  Walla testified that the items would have to be removed in order to allow the hatches to be opened for inspection.  (Id.)  Walla makes no mention of any need to open the hatches for the purpose of repairs.  (Id.)  Indeed, Invoice 22d, covers crane lifts used to open hatches for repairs. (Def.'s Ex. 18 (Invoice 22d, Item 8-10032.2).)  This evidence raises a genuine issue as to whether the cranes were necessary to remove loads to allow the hatches to be opened for the purpose of repair.  Therefore, summary judgment with respect to the crane fees is denied.

In addition, Plaintiff points to evidence that reefer cooling water was used to provide air conditioning for the crew, not the repair personnel and notes that the invoice does not indicate that the air conditioning was repaired.  (Pl.'s Br. 34; Pl.'s Supp. Br. 5 (citing Def.'s Ex. 18 (Invoice 22b at 5).)  Walla states, however, that the bridge, where repairs were being conducted on the radar, was air-conditioned; thus, at least one air-conditioned area was the site of repairs.  (Def.'s Ex. 19 (Walla Dep. 99:19–24).)  As Plaintiff's expert appears to concede that repairs were ongoing in air-conditioned portions of the vessel, the court finds that the reefer cooling water was used, at least in part, for the purpose of repair.  Therefore, summary judgment for Defendant with respect to the cooling water is granted.

Plaintiff next points to evidence that charges for fresh water were incurred for the benefit of the crew, not repair workers.  (Pl.'s Br. 34.)  Walla testified that the fresh water was

used for crew showers and washing machines. (Def.'s Ex. 19 (Walla. Dep. 100:3–7).)  This raises

a genuine issue of material fact as to whether the charge relates to repairs.  Summary judgment

with respect to the provision of fresh water is therefore denied.

Likewise, Plaintiff points to evidence that compressed air was provided for the use

of the crew, either for air-conditioning or for the use of air-powered tools.  (Def.'s Ex. 19 (Walla

Dep. 111:3–112:17).)  Walla could not confirm whether the crew on board at the time actually

used any tools that required compressed air (id. at 112:12–17), but this evidence raises a genuine

issue as to whether the purpose of the compressed-air hookup was used for repairs.  Summary

judgment with respect to the provision of compressed air is therefore denied.

Plaintiff also points to evidence that the removal of all debris from cargo holds was

necessary for inspections, but not necessarily needed for repairs conducted in the holds.  (Def.'s

Ex. 19 (Walla Dep. 117:21–119:2).)  This evidence is sufficient to raise a genuine issue of

material fact regarding the relationship between the cleaning of the holds and repairs.  Thus,

summary judgment with respect to cargo hold top cleaning (Section 2.1-9A), cargo hold guide

support cleaning (Section 2.1-9B), and engine room/ fan cleaning (Section 2.1-34) is denied.

Plaintiff does not point to evidence showing that the lay-berth was used

exclusively for the purpose of inspections.  Indeed, Walla's testimony suggests that during the

time this lay-berth was charged, "[t]here could have been" ongoing repairs on the vessel.  (Def.'s

Ex. 19 (Walla Dep. 92:15–19).)  Plaintiff bears the burden of proof at trial, and therefore, must

produce evidence to raise a genuine issue as to its claim.  Since Plaintiff concedes that repairs

could be ongoing at this time, it also appears that use of telephone services (Section 1-2), fireline

water (Section 1-4), a certificate the vessel is "gas free" (Section 1-5), sanitary facilities (Section

1-6), line handlers (Section 1-16), heat lamps (Section 1-18), dock trial (Section 1-19), sea trial

(Section 1-20), tank ventilation (Section 1-21), passageway (Section 1-22), and ballast water

(Section 1-24), could be related to repairs.  Plaintiff has pointed to no evidence to the contrary.

Summary judgment with respect to these items is therefore granted.

Finally, Plaintiff concedes in its brief that Section 1 items 1-9 (shore power

connection), 1-10 (shore power supply), 1-11 (shore power while the vessel was afloat), and 1-3

(use of the port engineer's office to coordinate activities onboard the Crusader) were dutiable at a

prorated amount.  (Pl.'s Br. 34 n.33.)  Therefore, summary judgment is granted with respect to

these items.

Invoice 22b also covers numerous items for cleaning, inspections, and tests that

Customs found to be fully dutiable.  (Def.'s Ex. 18 (Invoice 22b).)  This opinion will address

these items in the order in which Defendant has argued in its summary judgment memorandum.

(See Pl.'s Br. 33–38.)

Defendant argues that item 2.1-12, for rudder inspection, is related solely to repairs

of the vessel, and therefore is fully dutiable.  (Def.'s Br. 35.)  Plaintiff contests this assertion by

pointing to evidence that the ABS survey shows that "[r]udder(s), rudder pintle(s) . . . rudder

gudgeon(s)[,] rudder stock(s) and stuffing box(es)" were inspected.  (See Pl.'s Ex. 13 (ABS Dry-

dock Report).)  This evidence is sufficient to raise a question as to whether the rudder was

inspected, and whether the cleaning was done, for the purpose of those inspections.  Summary

judgment for this item is denied.

Customs found that item 2.1-18, a cherry picker used for inspection of a box

girder, was related to a repair survey, not the general inspection, and therefore, fully dutiable.  HQ

116237 at 5.  This box girder inspection involved the use of a movable platform to look into hatch covers and the box girder for inspections.  Defendant contends that this was necessary for steel renewals and coatings work, citing to a corrosion report prepared by EPS Corrosion Control, Inc. (Def.'s Br. 35 (citing Def.'s Ex. 16 (EPS Corrosion Control Report)).)  Plaintiff argues that the movable platform was also necessary for inspections, as evidenced by the ABS Dry-dock Report (Pl.'s Ex. 13), which includes entries for inspection of hatch openings.  (Pl.'s Br. 35–36.)  Such evidence raises a genuine issue as to whether this item related to inspections or repairs. Therefore, summary judgment with respect to this item is denied.

Similarly, Defendant argues that there is no genuine issue with respect to item 2.1-23, cleaning of port fuel tank, because it was necessary for repair of the vent pipe and sounding tube described in Invoice 22d, item number 8.9000-04, which Plaintiff conceded as dutiable. (Def.'s Br. 36.)  Plaintiff argues that this cleaning was carried out soley for purpose of the ABS inspection, and there is no evidence in the invoice or the testimony that show the cleaning was for the purpose of repair.  (Pl.'s Br. 36.)  Plaintiff cites to Walla's testimony, which states that items 2.1-23 through 2.1-25 were for cleaning for the purposes of inspection by ABS.  (Def.'s Ex. 19 (Walla Dep. 121:7–12).)  This evidence is sufficient to raise a genuine issue as to whether the cleaning was conducted solely for repair, and should be fully dutiable.  Therefore, summary judgment for this item is denied.

Defendant asserts the same arguments with respect to items 2.1-24 (cleaning No. 3 fuel oil tank), 2.1-25 (cleaning No. 5 fuel oil tank), and 2.1-28 (cleaning hydraulic oil from No. 8 cargo hold).  (Def.'s Br. 36.)  Plaintiff raises similar responses to items 2.1-24 and 2.1-25, but makes no mention of 2.1-28, thus conceding the item as fully dutiable.  (Pl.'s Br. 36; Oral Arg.

Tr. 59:16–60:10.)  Therefore, summary judgment is denied with respect to items 2.1-24 and 2.1-25, but granted with respect to 2.1-28.

Item 4.1-11 covers inspection of the main and emergency switchboards on the Crusader, which was treated as fully dutiable.  Defendant notes that Horizon's specifications include vacuum cleaning, replacement of wiring, a replacement of circuit breakers with "pitting or burn spots."  (Def.'s Br. 36 (citing Def.'s Ex. 22 (Horizon's Standard Specifications)).)  Plaintiff points to evidence that ABS inspected the switchboard, and that the invoice itself does not mention repairs of the switchboard, only cleaning and tightening.  (See Pl.'s Ex. 13 (ABS Dry-dock Report); see also Def.'s Ex. 18 (Invoice 22b, Item 4.1-11).)  Plaintiff notes that where a specification for work conflicts with the actual invoice for the work once it was performed, the invoice will ordinarily prevail.  (Pl.'s Br. 36); see also HQ 112910 (Dec. 1, 1993) ("Given the frequency with which work orders are changed, we cannot assume that the work actually performed was identical to the work proposed.").  The apparent conflict between the specification and invoice raises a genuine issue as to whether the switchboards were repaired at all.  Accordingly, summary judgment is denied with respect to this item.

Item 4.1-16 covers expenses for the inspection of a forepeak valve.  Defendant argues that the invoice itself describes repairs that were made to a block valve in the forepeak tank, and that the laborers "[f]reed up valve spindle & reassembled back in order."  (Def.'s Ex. 18 (Invoice 22b, Item 4.1-16).)  Plaintiff argues that this statement is ambiguous, and it is not clear whether freeing up the spindle was part of reassembly after inspection, or part of a repair.  (Pl.'s Br. 37.)  Reviewing the phrasing of the invoice, the court concludes that a reasonable fact finder could infer that "freeing" the spindle was part of reassembly following inspection, and not

necessarily repair.  On summary judgment, all reasonable inferences are drawn in favor of the

non-moving party, consequently, summary judgment on this item is denied.

      Item 4.2-1 covers expenses for the inspection of a "forced draft fan."  Customs

found this item to be fully dutiable because the "wording of the invoice itself indicates that the

work performed was a complete repair overhaul of the fan."  (Def.'s Br. 37.)  The invoice

includes certain tasks that could be taken to suggest repairs, such as placing the "fan shaft in [a]

lathe to confirm trueness."  (Def.'s Ex. 18 (Invoice 22b, Item 4.2-1).)  Plaintiff, however, points

to evidence that ABS inspected this item, and contends that "[a]ny work undertaken to ensure the

proper reassembly and functioning of the fan was part of the inspection itself."  (Pl.'s Br. 37.)

Because Plaintiff has not provided sufficient evidence as to whether this invoice was incurred

solely for the purpose of repairing the fan, the court finds that summary judgment is granted with

respect to this item.

      Item 4.2-7 concerns expenses for inspecting the Crusader's boiler stack.

Defendant contends that the removal of soot described in the invoice constituted a repair.  (Def.'s

Br. 37.)  Defendant also notes that Horizon's specifications do not mention the inspection of the

boiler stack.  (Id.)  Plaintiff points to the ABS Dry-dock Report that shows that the boiler stack

was inspected (see Pl.'s Ex. 13 (ABS Dry-dock Report)) and testimony that soot removal is

necessary for inspection.  (Def.'s Ex. 19 (Walla Dep. 131:25–132:9).)  The court finds that this

evidence is sufficient to raise a genuine issue of material fact, and summary judgment is therefore

denied for this item.

      Item 4.2-8 relates to expenses for washing of boilers for inspection, which

Customs found dutiable as a repair because no evidence was provided demonstrating that this

item was for "periodic inspections or surveys performed by ABS." HQ 116237 at 6. Defendant

argues that it is "evident" that washing was necessary for the "extensive boiler repairs." (Def.'s

Br. 37–38.) Plaintiff argues that the invoice states that the washing was "for inspections."

(Def.'s Ex. 18 (Invoice 22b, Item 4.2-8).) The terms of the invoice raise a genuine issue as to

whether the washing was conducted for the purpose of ABS inspections. Consequently, summary

judgment with respect to this item is denied.

Item 4.2-10 is an invoice for inspection of the Crusader's Nos. 1 and 2 service

pump discharge valves, which Customs found fully dutiable. The invoice states "[r]emoved to

workshop for inspection." (Def.'s Ex. 18 (Invoice 22b, Item 4.2-10).) Defendant seeks summary

judgment because it contends that the removal of two "globe valves" to a workshop "is indicative

that dutiable work on them was actually performed." (Def.'s Br. 38.) Plaintiff points to the terms

of the invoice as well, which state that the valves were "removed for inspection." (Def.'s Ex. 18

(Invoice 22b, Item 4.2-10).) Plaintiff also notes that ABS inspected these items. (Pl.'s Ex. 13

(ABS Dry-dock Report).) In addition, Plaintiff argues that the daily status reports from the

Crusader refer to "renewal" of packing valve gaskets, which raises a factual dispute as to whether

"renewal" constitutes "repair." (Pl.'s Br. 38.) Although "renewal" may be interpreted as a repair,

Plaintiff has presented sufficient evidence to raise a genuine issue as to the purpose of removing

the globe valves. Summary judgment with respect to this item is denied.

Item 5.1-12 relates to the inspection of a combined first stage heater, gland

condenser and drain cooler packing, which Customs found fully dutiable. The invoice for this

item refers to hydrostatically testing the heat exchanger to prove that it was leak free. (Def.'s Ex.

18 (Invoice 22b, Item 5.10-12).) As above, the invoice refers to inspections, not repairs, and

Plaintiff has pointed to evidence that these items were inspected by ABS.  Consequently, summary judgment with respect to item 5.1-12 is denied.

Finally, Defendant argues that summary judgment is warranted with respect to items 5.2-1,[7] 5.2-3, 5.2-4, 5.2-5, 5.2-6 and 5.2-7, which related to inspection of the Crusader's boiler and boiler access doors.  Defendant asserts that these items were integral to repairs conducted on the boiler and to determine if repairs were done correctly.  (Def.'s Br. 38.) Defendant argues that these services are part of the repairs completed on the boiler that were conceded by Plaintiff as dutiable in Invoice 22d, Section 5.2 ("Machinery Maintenance and Repairs Items Propulsion Boiler").  (Id.)  Plaintiff, however, points to the invoice, as well as the ABS Dry-dock Report, as evidence that the items under Invoice 22b, Section 5.2 ("Machinery Inspection Items Propulsion Boiler") do no relate to repairs but were for the inspection of the boilers.  (Pl.'s Br. 38; Def.'s Ex. 18 (Invoice 22b, Section 5.2).)  Because the invoice refers only to inspections, and there is a separate invoice for repairs completed on the boiler, and Plaintiff has provided evidence that these items were inspected by ABS, summary judgment with respect to these items is denied.

## C.  Invoice 26

This invoice involves parts that were used in inspections at Jurong, which Plaintiff conceded to be dutiable at the protest stage.  (Def.'s Ex. 4 (Horizon's Protest 2–4).)  As noted above, the court lacks jurisdiction to review an item which was not protested.  See XL Speciality Ins., 341 F. Supp. 2d at 1255.

---

[7] It appears Defendant erroneously listed Item 5.1.1 in its brief, of which there is none, instead of Item 5.2.1 ("Stage Port and Stbd Boilers").

### D.        Invoices 31a through 31c

These invoices cover expenses incurred, as above, for the "main agency fee,"
telecommunications fee, hiring of a cook, courier services, port dues, pilotage, tug boats,
Singapore goods and services tax , and freight forwarding.  Customs found these fees relevant to
both inspections and repairs and prorated duties.  HQ 116237 at 6.  Defendant argues that Plaintiff
provided no evidence to show the items are non-dutiable.  (Def.'s Br. 39.)  Plaintiff argues that it
incurred these expenses when moving the Crusader from dry-docking to lay-berth in order for the
vessel to be reactivated.  (Pl.'s Br. 39.)  As noted earlier, the court's finding that the lay-up itself
was made in part for the purposes of repairs renders these an "expense of repair" that may be
assessed at a prorated amount.  Consequently, summary judgment for Defendant on this item is
granted.

### E.        Invoice 31e

This invoice concerns various global marine services for the "supply of
provision[s]."  (Def.'s Ex. 18 (Invoice 31e).)  Plaintiff argues that it incurred these expenses in
order to feed the crew.  (Pl.'s Br. 39.)  Plaintiff, however, has not provided any evidence detailing
what each expense consisted of, and thus, why the expenses should not be dutiable.  Therefore,
summary judgement is granted with respect to this item.

### F.        Invoice 32

This invoice is for emergency and rescue materials.  Customs determined that all
costs on this invoice were dutiable, with the exception of the first aid kit and seasickness tablets.
HQ 116237 at 7.  Plaintiff points to the ABS SLE Mandatory Annual Survey as evidence that all
of these expenses were required for inspection and not related to repairs.  (Pl.'s Br. 39–40; Pl.'s

Ex. 15 (ABS SLE Mandatory Annual Survey).)  Because Plaintiff provides evidence that ABS

inspected these items, the court finds that Plaintiff has raised a genuine issue as to whether this

invoice was incurred solely for the purpose of inspection. Consequently, summary judgment for

this item is denied.

## CONCLUSION

In accordance with the opinion above, summary judgment is granted in part and

denied in part.  Accordingly, summary judgment is granted as to the following items:

- **Invoices 2 & 3**;

- **Invoice 5**;

- **Invoice 6a**;

- **Invoice 6b**: Items 1100 (lay-up charges), 1104 (riggers assistance), 1108 (garbage disposal), 1109 (shore power), 1118 (tug charge), 1118A (towing charges), 1119 (wharfage), 1124 (security watchman), 1135 (pilotage), and 8060 (marine gas oil supply) only;

- **Invoice 7a**;

- **Invoice 7b**: Items 1104 (riggers assistance), 1108 (garbage disposal), 1109 (shore power), 1118 (tug assistance), 1119 (wharfage), 1124 (security watchman), 1135 (pilotage), 8061 (Indonesian flag), 8062 (marine gas oil), and 8071 (walkie talkie) only;

- **Invoice 8a**;

- **Invoice 8b**: Items 9904 (land transportation), 9906 (boat services), and 9908 (port and navigation dues) only;

- **Invoice 11a2**: Items A (main agency fees) and B (telecommunications charges) only;

- **Invoice 11a3**: Items A (telecommunications charges) and C (air ticket for Mr. Joe Blunt) only;

- **Invoice 11b1**: Items A (main agency fees), C (telecommunication equipment), and E (ferry tickets to Karimun Island) only;

- **Invoice 11b3**: Items A (television) and F (survey of damaged portable generator) only;

- **Invoice 11b4**: Items B (courier services) and D (airline ticket for Mr. Wally Becker) only;

- **Invoice 11c**;

- **Invoice 11d1**: Items A (main agency fees) and C (telecommunications expenses) only;

- **Invoice 11d2**: Items A (telecommunications expenses) and F (freight forwarding) only;

- **Invoice 22a**: Items 1-1 (lay berth), 1-2 (telephone services), 1-4 (fireline water), 1-7 (garbage removal), 1-8 (crane services), and 1-16 (line handlers) only;

- **Invoice 22b**: Items 1-1 (lay berth), 1-2 (telephone service), 1-3 (port engineer's office), 1-4 (fireline water), 1-5 (gas free certification), 1-6 (sanitary facilities), 1-7 (garbage removal), 1-9 (shore power connection), 1-10 (shore power supply in drydock), 1-11 (shore power supply afloat), 1-13 (reefer cooling water), 1-16 (line handlers), 1-18 (heat lamps), 1-19 (dock trial), 1-20 (sea trial), 1-21 (tank ventilation), 1-22 (passageway), 1-24 (ballast water), 2.1-28 (cleaning hydraulic oil from No. 8 cargo hold), and 4.2-1 (forced draft fan inspection) only;

- **Invoices 31a through 31c**;

- **Invoice 31e**.

Summary judgment is denied as to the remaining items.

The parties shall consult and prepare an order for further proceedings in this matter within 30 days hereof.

   /s/ Jane A. Restani        
Jane A. Restani
Chief Judge

Dated: This 20th day of November, 2007.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                                    Deputy Clerk